OPINION OF THE COURT
Walter B. Tolub, J.
The receiver moves for an order: (i) declaring the lease for the garage space at the premises dated as of November 20, 1986 between 33 Greenwich Owners Corp. as landlord and Talia Management Co. as tenant null and terminated in all respects as of February 14, 1994 and compelling Talia to account for and turn over to the receiver all funds derived from the garage space from and after the above termination date with interest; (ii) declaring the lease for the laundry facilities at the premises dated as of November 20, 1986 between 33 Greenwich Owners Corp. as landlord and Talia Management Co. as tenant null and terminated in all respects as of February 14, 1994 and compelling Talia to account for and turn over to the receiver all funds derived from the laundry facilities from and after the above termination date with interest; (iii) awarding damages in the amount to be determined by the court from defendant Greenwich Realty Co. together with court costs, attorney’s fees; (iv) awarding use and occupancy for the garage and laundry room premises for the period February 14, 1994 to the present; and (v) directing defendant 33 Greenwich Owners Corp. to pay to the receiver the amount of any fees collected from tenant shareholders upon the sublease of their apartments or assignment of their shares and proprietary leases col *723 lected by Owners Corp. since the aforAsaid date of the order appointing the receiver.
This is an action for foreclosure of a cooperative apartment building located at 33 Greenwich Avenue in Manhattan. The defendant Greenwich Realty Co. (GRC) is the original sponsor of the building, which was converted to cooperative ownership on November 20, 1986. Simultaneous with the conversion, GRC’s affiliate, Talia Management Co. entered into two "sweetheart” leases for the garage and laundry room at the premises with the new cooperative apartment corporation Greenwich Owners Corp. (GOC). On or about November 2,1992 this action was instituted by the FDIC to foreclose on the mortgage. On December 29, 1994 the mortgage was sold and assigned to plaintiff WHCS Real Estate Limited Partnership. On or about March 21, 1995 this court appointed James Andres as receiver of the premises.
On November 16, 1993 GOC purported to terminate the garage and laundry room leases pursuant to the Federal Condominium and Cooperative Conversion Protection and Abuse Relief Act (Abuse Relief Act) (15 USC § 3607). Under the terms of the cancellation notice, termination of the leases would be effective 90 days later.
Despite the service of the termination notices Talia has remained in possession of the leased space, and continues to pay rent which has been accepted by GOC. After the court ordered appointment of a receiver, notices were sent to Talia demanding possession of the garage and laundry and an accounting for all rents and profits.
Discussion
The Abuse Relief Act (15 USC § 3607 [a]) provides:
"(a) * * * Any contract or portion thereof which is entered into after [October 8, 1980] * * * and which—
"(1) provides for operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of property serving the condominium or cooperative unit owners in such project;
"(2) is between such unit owners or such association and the developer or an affiliate of the developer;
"(3) was entered into while such association was controlled by the developer through special developer control or because the developer held a majority of the votes in such association; and
*724 "(4) is for a period of more than three years, including any automatic renewal provisions which are exercisable at the sole option of the developer or an affiliate of the developer,
"may be terminated without penalty by such unit owners or such association.”
Under section 3607 (b) any termination may occur only during the two-year period beginning on the date on which: (1) special developer control over the association is terminated or (2) the developer owns 25% or less of the units in the conversion project, whichever occurs first. For the purpose of this proceeding, the court need only consider the first of these two events.
The sole issue to be determined by this court is the time period when special developer control over the association was terminated. In opposition to the motion the defendants Talia and GRC rely on 13 NYCRR 18.3 (v) (5) (iii) which provides that sponsor control automatically terminates exactly five years from the conversion date. The conversion date in this proceeding occurred on November 20, 1986. The opposition claims that because New York law provides for developer control to terminate five years after such conversion, the cooperative corporation had two years from November 20, 1991 to terminate the leases.
The first argument raised by the opponents to the motion is the contention that in order to be valid, termination must be effective within the two-year statutory period and it is insufficient to merely send notices within the two-year time frame where termination will occur beyond two years. There is case law to the effect that termination of the leases must be made within the two-year statutory period (Tudor City Place Assocs. v 2 Tudor City Tenants Corp., 924 F2d 1247; Barnan Assocs. v 196 Owners Corp., 797 F Supp 302). Both cases indicate that in order to effectively terminate a lease under the Relief Abuse Act, actual termination must occur within the two-year statutory period. Service of a notice of termination, even if served within the two-year allotted time is ineffective if termination occurs outside the two-year statutory period. Thus they argue that the notice of termination served in the underlying action approximately four days prior to the two-year statutory period was ineffective since the termination date fell beyond the two-year limitations period.
This court concurs with the opposition’s argument that in order to be effective actual termination of the leases must occur within two years. Merely serving a notice of termination *725 within the two-year period, is ineffective unless the termination occurs within the statutory time frame. While not explicitly holding that in order to be effective termination must occur within the two-year period, the court in 2 Tudor City Place Assocs. (supra) inferred that actual termination must occur within the two-year period.
In a decision subsequent to 2 Tudor City Place Assocs. (supra), the Second Circuit stated that the question of whether to calculate the two-year period from the date the notice is sent or its effective date is still open and was not entertained by the court in 2 Tudor City (181 E. 73rd St. Co. v 181 E. 73rd Tenants Corp., 954 F2d 45). This decision notwithstanding a liberal reading of the 2 Tudor City case indicates to this court that in order to be effective, termination of a lease must occur within two years after the surrender of special developer control.
The question to be addressed by the court then turns to the period in time when sponsor control terminates. According to 13 NYCRR 18.3 (v) (5) special developer control is to terminate not more than five years after conversion. In this case the opposition argues that since the conversion took place on November 20, 1986, the latest that the developer could control the board was November 20, 1991. Thus the two-year period in which the new board could terminate the leases in question expired on November 20, 1993.
However, the plaintiff argues that actual control of the board did not occur until after the five-year period expired. The receiver contends that the sponsor controlled the Board of Directors until at least January 7, 1992. In an affidavit from Lisa Gibson, a shareholder in the co-op and a board member, she states that in January of 1992 she was "appointed” to the Board of Directors along with another shareholder. She claims that no shareholder election had taken place prior to her appointment, and that the first time that the shareholders elected its own board occurred in July of 1992. Thus the plaintiff argues that the actual date that sponsor control expired was after an independent board was elected in July of 1992. The termination notices served in November of 1993 would therefore be considered timely.
Special developer control has been equated by the Second Circuit Court of Appeals with developer domination of the Board of Directors (West 14th St. Commercial Corp. v 5 W. 14th Owners Corp., 815 F2d 188; see also, 2 Tudor City Place Assocs. v 2 Tudor City Tenants Corp., 924 F2d 1247). Such control has been found not to terminate until the tenants elected an inde *726 pendent Board of Directors (2 Tudor City Place Assocs. v 2 Tudor City Tenants Corp., supra). Moreover section 3603 (22) of the Abuse Relief Act defines special developer control as "any right arising under State law, cooperative or condominium instruments, the association’s bylaws * * * or similar agreement, through which the developer may control or direct the unit owners’ association or its executive board.”
The opposition would invoke 13 NYCRR 18.3 (v) (5) and would have this court measure the date that the sponsor relinquished control as the date five years after the date of conversion. The result were the court to accept the defendant’s contention is that the new board would have less than the two years allotted in the Act to terminate the leases. Clearly the Abuse Relief Act was intended to eliminate the potential for abuse to which the conversion process lends itself (181 E. 73rd St. Co. v 181 E. 73rd St. Tenants Corp., supra, at 47). Any shortening of the two-year limitations period would be in contravention of the Abuse Relief Act and thérefore not in conformity with the intended purpose of the Act, to eliminate the potential for abuse during conversion of the premises. Here this is exactly what the opposition proposes to do. The rights of an independent Board of Directors should not be compromised by the acts of a sponsor-dominated board.
It is undisputed that the first independent Board of Directors of the co-op was elected in July of 1992. The two-year period set forth in the Act therefore did not commence until the new board was elected. Thus the notices of termination served in November of 1993 and effective in February of 1994 were timely as the termination date falls within the two years after an independent board was elected.
The court’s inquiry however does not stop here. While the leases were effectively terminated in February of 1994, the defendants remained in possession of the premises, and continued to pay rent which was accepted by the cooperative. By their actions, the cooperative created a month-to-month tenancy with the lessees (Real Property Law § 232-c; Bonner v Nash, 70 Mise 2d 752). Thus the receiver is relegated to commencing a summary holdover proceeding against these entities.
The court has considered the plaintiff’s remaining claims which seek damages and use and occupancy from February 1994 to the present. By accepting rent for the period after termination the cooperative has waived any entitlement to receive use and occupancy. It also follows that the receiver is not entitled to collect any damages.
*727 Finally that portion of the motion by the receiver which seeks a turnover of all fees collected by GOC in connection with subletting or lease assignments is denied. The receiver has not set forth any basis which supports his position that he is entitled to such fees.
Accordingly the receiver’s motion is granted to the extent of declaring the leases for the garage and laundry facilities terminated as of February 14, 1994. The balance of the motion which seeks an accounting of funds derived from the laundry and garage facilities and for damages and use and occupancy is denied.